IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 09-cv-02584-PAB-MJW

CHRISTINA MARQUEZ,

    Plaintiff,

v.

BRIAN NORTON, Sheriff of Rio Grande County, Colorado,
BOYD WHEELWRIGHT, Deputy Sheriff of Rio Grande County, Colorado,
HARVEST STANDARD, LLC, a Texas limited liability company, d/b/a/ Harvest Select,
MICHELE PETERSON, and
JENNIFER METZ,

    Defendants.

---

# ORDER

---

This matter is before the Court on the motion for summary judgment [Docket No. 50] filed by defendants Brian Norton and Boyd Wheelwright. These defendants seek dismissal of plaintiff's claims against them for wrongful arrest, malicious prosecution, and excessive bond. The summary judgment motion is fully briefed and ripe for disposition.

## I. BACKGROUND[1]

In September 2000, plaintiff Christina Marquez began working at Harvest Select, LLC as a weight scales operator in its Monte Vista, Colorado potato warehousing and brokerage operation. The following May plaintiff was promoted to the position of Accounts Payable Clerk. In that position, plaintiff took on greater responsibilities,

---

[1]Unless otherwise indicated, the following facts are not in dispute.

including ordering office supplies. Plaintiff was again promoted in late 2006, taking the position of Office Manager. In that role, she was still responsible for ordering office and warehouse supplies. Plaintiff was demoted to the Accounts Payable Clerk position in July 2008. Jennifer Metz, a new hire, replaced her as Office Manager. Upon taking her position, Ms. Metz discovered a $250,000 shortfall on the balance sheet. In the fall of 2008, Ms. Metz investigated the source of the discrepancy, including a review of the cancelled checks. She discovered, however, that checks from several months were missing.

Ms. Metz and her supervisor, Michele Peterson, reported Ms. Metz's findings to the Rio Grande County Sheriff's Office. They met with Sheriff Brian Norton and Undersheriff Chuck Chick. During the meeting, Ms. Metz informed Sheriff Norton of the $250,000 discrepancy. By that time, the discrepancy had grown to $500,000. She also told Sheriff Norton that she had found three unauthorized checks during her investigation and believed there could be more. Ms. Metz informed Sheriff Norton that plaintiff had the authority to write checks for the company. Sheriff Norton assigned Deputy Boyd Wheelwright to investigate the allegations. Ms. Metz' initial meeting with the authorities occurred sometime prior to plaintiff resigning from her position in December 2008.

Deputy Wheelwright called Ms. Metz after the initial meeting to arrange a meeting where she could bring any additional evidence she might have regarding her allegations against plaintiff. Over the months that followed, Ms. Metz "continued her internal investigation and coordinated with both Wheelwright and Deputy District Attorney Rebecca Wiard." Docket No. 73 at 7-8, ¶ 17. Ms. Metz supplied

2

documentation to the authorities. Her findings were memorialized in an affidavit attached to the application for an arrest warrant filed by the district attorney's office. The affidavit recounted that plaintiff had ordered a large number of printer cartridges from American Computer Supply over the course of a few years. Over 2000 printer cartridges were missing upon a search of the Harvest Select premises. Moreover, American Computer Supply sent rebates to Harvest Select in the form of gift cards and other gratuities, none of which could be located.

A judge signed the arrest warrant. Deputy Wheelwright contacted plaintiff and arranged for her to meet him at the Sheriff's Station in Del Norte, Colorado, where plaintiff turned herself in. On September 22, 2009, the district attorney dismissed the criminal action against plaintiff without prejudice by motion and entry of *nolle prosequi*.

Plaintiff does not dispute the foregoing facts. She does, however, contend that they do not include additional relevant information. For example, plaintiff does not dispute that she took steps to hide the purchases of printer cartridges by falsifying entries in the company's accounting records, but contends that she was authorized to do so by Michele Peterson and another supervisor named Steve Seward. Moreover, she contends that she believed she was ordering twelve dozen printer cartridges from American Computer Supply, but in fact had ordered 144 gross printer cartridges. Upon discovering her error and being told by American Computer Supply that she could not cancel the order, plaintiff contends that she began hiding the purchases with the knowledge of Ms. Peterson and another supervisor by the name of Steve Seward.[2]

---

[2] Ultimately, however, she admits that "[f]ar more than 144 gross printer cartridges were actually ordered and received by Harvest Select." Docket No. 73 at 5, ¶ 8.

American Computer Supply sent $3,000 to $4,000 in premiums to Harvest Select over a five year period, but plaintiff disputes spending that entire amount. However, "[p]laintiff admits to redeeming and using $200 to $500 of the premiums sent over those five years," Docket No. 73 at 5, ¶ 9, and to distributing certain premiums to others. *See, e.g.*, Docket No. 73-5 at 15, Marquez Depo. at 238, ll. 1-16.

## II. STANDARD OF REVIEW

Based on the foregoing factual record, defendants Norton and Wheelwright seek summary judgment on plaintiff's claims. Summary judgment is warranted under Federal Rule of Civil Procedure 56(c) when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248-50 (1986); *Concrete Works, Inc. v. City & County of Denver,* 36 F.3d 1513, 1517 (10th Cir. 1994); *see also Ross v. The Board of Regents of the University of New Mexico*, 599 F.3d 1114, 1116 (10th Cir. 2010). A disputed fact is "material" if under the relevant substantive law it is essential to proper disposition of the claim. *Wright v. Abbott Labs., Inc.,* 259 F.3d 1226, 1231-32 (10th Cir. 2001). Only disputes over material facts can create a genuine issue for trial and preclude summary judgment. *Faustin v. City & County of Denver,* 423 F.3d 1192, 1198 (10th Cir. 2005). An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee,* 119 F.3d 837, 839 (10th Cir. 1997). When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. *Id.*; *see McBeth v. Himes*, 598 F.3d 708, 715 (10th Cir. 2010).

## III. DISCUSSION

Plaintiff's complaint contains three claims for relief arising under 42 U.S.C. § 1983 against defendants Norton and Wheelwright: (1) wrongful arrest, (2) malicious prosecution, and (3) excessive bond.[3]

### A. <u>Wrongful Arrest Claim</u>

#### *1. Qualified Immunity*

Defendants assert the defense of qualified immunity to plaintiff's claim of wrongful arrest. Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). Upon a public official's assertion of a qualified immunity defense, plaintiff bears a "heavy burden" under a two-pronged analysis. *Buck v. City of Albuquerque,* 549 F.3d 1269, 1277 (10th Cir. 2008). Until recently, the plaintiff was required to "first establish that the defendant's actions violated a constitutional or statutory right." *Smith v. Cochran,* 339 F.3d 1205, 1211 (10th Cir. 2003) (quoting *Holland ex rel. Overdorff v. Harrington,* 268 F.3d 1179, 1185 (10th Cir. 2001)). The Supreme Court, however, has altered the qualified immunity analysis by holding that the "mandatory, two-step rule for resolving all qualified immunity claims should not be retained." *Pearson v. Callahan,* --- U.S. ----, 129 S. Ct. 808, 817 (2009). Instead, "judges of the district courts and the courts of appeals should be permitted to exercise

---

[3]Plaintiff also brings a separate claim for relief against Norton and Wheelwright seeking attorney's fees.

their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson,* 129 S.Ct. at 818. The determination of whether a violation occurred under the first prong of the qualified immunity analysis turns on substantive law regarding that right. *See, e.g., Casey v. City of Fed. Heights,* 509 F.3d 1278, 1282-83 (10th Cir. 2007).

Under the second prong, the plaintiff has to establish that the right at issue was "clearly established" at the time of the defendant's alleged misconduct. *Saucier v. Katz,* 533 U.S. 194, 201 (2001). Here, the Court begins with the first prong of the analysis.

### *2. Probable Cause to Arrest*

Plaintiff contends that the warrant for her arrest was not supported by probable cause. The Fourth Amendment requires that an arrest warrant be supported by "a substantial probability that a crime has been committed and that a specific individual committed the crime." *Taylor v. Meacham*, 82 F.3d 1556, 1562 (10th Cir. 1996) (quotation marks omitted). "While '[t]he probable-cause standard is incapable of precise definition or quantification,' the Supreme Court has told us that probable cause, as the very name implies, 'requires only a probability or substantial chance of criminal activity.'" *Painter v. The City of Albuquerque*, No. 09-2135, 2010 WL 2511539, at *3 (10th Cir. June 23, 2010) (quoting *Maryland v. Pringle*, 540 U.S. 366, 371 (2003), and *Illinois v. Gates*, 462 U.S. 213, 243 n.13 (1983)). The focus is upon the facts known to the arresting officer at the time of the arrest. *See Beck v. Ohio*, 379 U.S. 89, 91 (1964). Consequently, a "police officer who arrests someone with probable cause or a valid

6

warrant is not liable for false arrest simply because the innocence of the suspect is later established." *Atkins v. Lanning*, 556 F.2d 485, 487 (10th Cir. 1977); *see Painter*, 2010 WL 2511539, at *3 ("In other words, it is irrelevant to the probable cause analysis whether a person is later acquitted of the crime for which she or he was arrested.") (citing *Michigan v. DeFillippo*, 443 U.S. 31, 36 (1979)).

The arrest warrant application in this case was supported by an affidavit by Deputy Wheelwright. That affidavit, as plaintiff emphasizes, relied almost exclusively on information provided by Ms. Metz. Plaintiff, however, does not identify which facts in the affidavit are false or why the affidavit was insufficient to provide probable cause for plaintiff's arrest.[4] Plaintiff fails to identify any reason for Deputy Wheelwright not to have believed Ms. Metz and ignores the fact that he received documentation from Ms. Metz corroborating her concerns. *See United States v. Brown*, 496 F.3d 1070, 1075 (10th Cir. 2007) ("The veracity of identified private citizen informants (as opposed to paid or professional criminal informants) is generally presumed in the absence of special circumstances suggesting that they should not be trusted.") (citations and quotation marks omitted); *Easton v. City of Boulder*, 776 F.2d 1441, 1449 (10th Cir. 1985). Rather, plaintiff simply offers her own explanation for the conduct at issue. The facts known to Deputy Wheelwright, however, supported the conclusion that there was a

---

[4]*See Pett v. Dudzinski*, 183 F. App'x 740, 741 (10th Cir. 2006) ("Plaintiffs do not dispute that the affidavit, taken on its face, established probable cause for their arrests. They claim, however, that relevant information in the affidavit was false and that defendants are responsible for the inclusion of the falsehoods. To establish this constitutional violation, plaintiffs are required to present evidence tending to show that defendants 'knew that the challenged information was false or that [they] had a reckless disregard for its truthfulness.' Plaintiffs presented no such evidence.") (quoting *Beard v. City of Northglenn*, 24 F.3d 110, 114 (10th Cir. 1994)).

7

"substantial chance of criminal" activity by plaintiff. *Gates*, 462 U.S. at 243 n.13. That plaintiff has her own explanation does not undermine probable cause. "Once a police officer has a reasonable basis for believing there is probable cause, he is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest." *Ricciuti v. N.Y.C. Transit Authority*, 124 F.3d 123, 128 (2d Cir. 1997); *see Harris v. Commerce City*, No. 09-cv-01728-MSK-KMT, 2010 WL 3307465, at *8 (D. Colo. Aug. 18, 2010) ("Although it may be true that a more thorough investigation might have cast Ms. Jenkins' allegations in a different light, the law does not require a police officer to complete a thorough investigation before electing to effect an arrest."); *cf. Painter*, 2010 WL 2511539, at *4 ("[T]he facts known to the officers here, while not pointing uniformly in the same direction or metaphysically dispositive of Mr. Painter's intent, were sufficient for an objectively reasonable officer to think that Mr. Painter *probably* harbored the intent to cash a check he knew not to be valid.") (emphasis in original).

Moreover, even under plaintiff's version of events, she was involved in the alleged misconduct. She does not dispute that she helped hide the purchases of printer cartridges. Rather, she contends she was not the only one. Plaintiff also admits that she spent premiums received from American Computer Supply, but disputes that she spent or retained possession of all of them. At her deposition, she testified that she gave a number of gift cards to other employees. She does not explain, nor is there any evidentiary basis to determine, how these averments, even if known *and believed* by the police at the time, would somehow exculpate her.

Finally, in response to defendants' motion, plaintiff identifies no evidence that

defendant Norton took part in securing or executing the arrest warrant. That is a sufficient basis to award summary judgment in his favor. *See Dodds v. Richardson*, 614 F.3d 1185, 1199-1200 (10th Cir. 2010) (noting that the Supreme Court's "requirement that § 1983 liability only be imposed upon those defendants whose own individual actions cause a constitutional deprivation because it requires plaintiffs prove each defendant took some act with the constitutionally applicable state of mind that caused the alleged constitutional violation"). Moreover, regardless of defendant Norton's potential involvement, the Court has already found that the record lacks any evidence that would permit a jury to find that plaintiff's right to be free from arrest without probable cause was violated. In sum, the Court finds that the record lacks any evidence supporting a jury finding in plaintiff's favor on her wrongful arrest claim against defendants Wheelwright and Norton.

### 3. Clearly Established

Even if plaintiff could satisfy the first prong of the qualified immunity analysis, plaintiff's claim would fail at the second prong. In support of her argument that her right not to be wrongfully arrested was clearly established, plaintiff relies entirely on the general proposition that an arrest warrant must be supported by probable cause. However, the "relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful *in the situation he confronted.*" *Casey,* 509 F.3d at 1283-84 (quoting *Saucier,* 533 U.S. at 202) (emphasis added); *see also Anderson v. Creighton,* 483 U.S. 635, 640 (1987). "A plaintiff can demonstrate that a constitutional right is clearly established by

9

reference to cases from the Supreme Court, the Tenth Circuit, or the weight of authority from other circuits." *Gann v. Cline,* 519 F.3d 1090, 1092 (10th Cir. 2008) (quoting *Anderson v. Blake,* 469 F.3d 910, 914 (10th Cir. 2006)) (internal quotation marks omitted).[5] However, "contrary authority from other circuits does not preclude a finding that the law in this circuit was clearly established, if the contrary authority can be distinguished." *Currier v. Doran,* 242 F.3d 905, 923 (10th Cir. 2001).

As the Tenth Circuit has pointed out, the "difficult part of this inquiry is identifying the level of generality at which the constitutional right must be 'clearly established.'" *Casey*, 509 F.3d at 1284. Plaintiff is correct that it was clearly established at the time that the warrant for arrest had to be supported by probable cause. That, however, does not end the inquiry regarding whether the factual underpinnings of this particular case would support finding that a clearly established right has been violated. As the Tenth Circuit has noted in the context of excessive force, "the fact that it is clear that any unreasonable use of force is unconstitutional does not mean it is always clear *which* uses of force are unreasonable." *Id.*

---

[5]In *Prison Legal News, Inc. v. Simmons*, 401 F. Supp. 2d 1181, 1189-90 (D. Kan. 2005), the court noted that the quoted language "from other circuits" appears to be a misquote of the Tenth Circuit's decision in *Medina v. City and County of Denver*, 960 F.2d 1493, 1498 (10th Cir. 1992), where the court used the language "from other courts." That misquote first appeared in *Murrell v. School District No. 1, Denver, Colo.*, 186 F.3d 1238, 1251 (10th Cir. 1999), and has since appeared repeatedly in Tenth Circuit cases. The *Prison Legal News* court, though concluding that the "misquote was merely a scrivener's error" and was not meant as a substantive change to the legal standard, added that "the fact that this error has not been discussed in a reported case from the Tenth Circuit suggests the error may not be very significant." 401 F. Supp. 2d at 1191. "In other words, although the circuit may be willing to consider cases from courts beyond the federal appellate courts, the focus should normally be on cases decided by other circuits." *Id.*

Qualified immunity provides "ample room for mistaken judgments," *Malley v. Briggs*, 475 U.S. 335, 343 (1986); *cf. Casey*, 509 F.3d at 1286 ("[A]n officer's violation of the *Graham* reasonableness test is a violation of clearly established law if there are 'no substantial grounds for a reasonable officer to conclude that there was legitimate justification' for acting as she did." (quoting *Holland ex rel. Overdorff v. Harrington,* 268 F.3d 1179, 1197 (10th Cir. 2001))); *Whitington v. Lawson*, No. 06-cv-00759-LTB-CBS, 2009 WL 3497791, at *3 (D. Colo. Oct. 29, 2009) ("Qualified immunity exists so long as reasonable officials in the same situation as the defendants could disagree on the appropriate course of action to follow.") (citing *Holland*, 268 F.3d at 1186). "[D]efendants are required to make 'reasonable applications of the prevailing law to their own circumstances.'" *Currier*, 242 F.3d at 923 (quoting *Murrell v. Sch. Dist. No. 1*, 186 F.3d 1238, 1251 (10th Cir. 1999)).

Here, plaintiff fails to identify any authority that would have put Deputy Wheelwright on notice that his conduct violated a clearly established right. Of course, factual novelty alone will not automatically provide a state official with the protections of qualified immunity. *See Blake,* 469 F.3d at 914 ("[A] general constitutional rule that has already been established can apply with obvious clarity to the specific conduct in question, even though the very action in question has not previously been held unlawful." (internal quotation marks and alteration marks omitted)).[6] The Tenth Circuit employs a "sliding scale" in identifying clearly established law: "[t]he more obviously

---

[6] *See Buck,* 549 F.3d at 1290 ("The law is clearly established either if courts have previously ruled that materially similar conduct was unconstitutional, or if a general constitutional rule already identified in the decisional law applies with obvious clarity to the specific conduct at issue." (internal quotation marks and alteration marks omitted)).

11

egregious the conduct in light of prevailing constitutional principles, the less specificity is required from prior case law to clearly establish the violation." *Casey,* 509 F.3d at 1284 (quoting *Pierce v. Gilchrist,* 359 F.3d 1279, 1298 (10th Cir. 2004)).

But, as the *Painter* court noted, the Supreme "Court's own example of such a situation indicates this exception is a narrow one: the Court noted that although '[t]here has never been ... a section 1983 case accusing welfare officials of selling foster children into slavery[,] it does not follow that if such a case arose, the officials would be immune from damages.'" *Painter*, 2010 WL 511539, at *7 (quoting *Lanier*, 520 U.S. at 271 (internal quotation marks omitted)). Here, like in *Painter*, Deputy Wheelwright's "conduct in this case surely does not so obviously run afoul of law that an assertion of qualified immunity may be overcome based solely on the Fourth Amendment's general prohibition against arrests without probable cause." *Id.* The Court "simply cannot say that the general proposition – that probable cause is required for an arrest – made it 'apparent' that the facts known to [him] did not justify arresting [plaintiff]." *Id.* Beyond the "general proposition," plaintiff identifies no basis to find in her favor on the second prong of the qualified immunity analysis.

### B. Malicious Prosecution and Excessive Bond

Defendants Norton and Wheelwright contend that they are entitled to summary judgment on plaintiff's claims for malicious prosecution and excessive bond because they had no authority to prosecute plaintiff or to set her bond and, to the extent they were involved in her arrest and detention, their actions were supported by probable cause. Plaintiff's probable cause arguments have been resolved above. As to defendants' contentions regarding their lack of involvement in setting her bond or

prosecuting her case, plaintiff offers no argument and cites no evidence to the contrary.[7] Plaintiff may not rest on the allegations in her complaint, but rather must "set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). She has failed to do so and, therefore, summary judgment shall enter against her on her malicious prosecution and excessive bond claims. *See* Fed. R. Civ. P. 56(e)(2) ("If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party.").

## IV. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that the motion for summary judgment [Docket No. 50] filed by defendants Brian Norton and Boyd Wheelwright is GRANTED. Plaintiff's claims against defendants Norton and Wheelwright are dismissed. It is further

**ORDERED** that any final judgment entered upon resolution of all claims against all parties in this case shall reflect the rulings in this order.


DATED October 29, 2010.

BY THE COURT:

---

[7]The Court notes that, in regard to plaintiff's malicious prosecution claim, the record does not provide a basis to conclude that plaintiff's case resolved favorably to her. *See Wilkins v. DeReyes*, 528 F.3d 790, 803 (10th Cir. 2008) ("To decide whether a *nolle prosequi* constitutes a favorable termination, we look to the stated reasons for the dismissal as well as to the circumstances surrounding it in an attempt to determine whether the dismissal indicates the accused's innocence.").

s/Philip A. Brimmer
PHILIP A. BRIMMER
United States District Judge